UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

FRANK LOPEZ,

                                Petitioner,

            -against-                                    09 Civ. 8148 (RJH)

                                                         **MEMORANDUM OPINION
                                                         AND ORDER**

DUKE TERRELL, as Warden,
Metropolitan Correctional Center – New
York, and
JOE NORWOOD, as Regional Director,
Northeast Region, Federal Bureau of Prisons,

                                Respondents.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Richard J. Holwell, District Judge:

Federal law encourages prisoners to behave well.  18 U.S.C. § 3624(b) directs the

Federal Bureau of Prisons ("BOP") to apply up to 54 days of Good Conduct Time

("GCT") against a prisoner's sentence for each year that he or she displays "exemplary

compliance with institutional disciplinary regulations."  The issue in this case is whether

the statute permits prisoners to accrue GCT for time served before the day they are

sentenced in federal court, and if so, under what circumstances.  The BOP awards GCT

for time in pretrial detention to any prisoner who is eventually sentenced on "the crime

for which he or she was in pretrial status," regardless of whether the pretrial time was

served in state or federal custody.  28 C.F.R. § 523.17(*l*).  The agency deviates from that

policy, however, where a prisoner serves pretrial time that is also credited against a

related state sentence.  For example, if a prisoner is convicted of and sentenced for a

crime in state court and then writted into federal custody, prosecuted, and sentenced on a related federal charge, the BOP will not award GCT for any time served—whether in state or federal custody—before the federal sentencing date.  Frank Lopez, a federal prisoner, served eight years on a state narcotics conviction, four of them in federal pretrial custody, before being convicted and sentenced for a related narcotics conspiracy in federal court.  He brings a petition for a writ of habeas corpus under 28 U.S.C. § 2241 challenging the BOP's determination that he is not eligible for GCT under § 3624(b) for either (1) the four years he served in state prison before being writted into federal custody; or (2) the four years he was detained in federal custody prior to his federal sentencing date.  The petition is granted.  The Court applies *Skidmore* deference but finds the BOP's interpretation of § 3624(b) unpersuasive.  The case is remanded to the BOP for recalculation of Lopez's GCT in a manner consistent with this opinion, based on a term of imprisonment that began when he was arrested on August 11, 2000.

**I**

Frank Lopez is currently serving a federal sentence for conspiracy to distribute crack cocaine.  This Court sentenced Lopez for that crime on June 19, 2008, but by that time he had already served almost eight years in state and federal prisons as a result of the same drug-related conduct that led to the federal sentence.  This continuous period of incarceration began on August 11, 2000, when New York City police officers arrested Lopez for selling crack in the Bronx.  He pleaded guilty shortly thereafter to criminal sale of a controlled substance and was sentenced to 4.5 to 9 years in prison.  After serving a little over four years on this charge, Lopez was writted into federal custody on November 4, 2004, and was indicted in April 2005 in the Southern District of New York on federal

charges for conspiring to distribute crack during the period of 1993 through August 2000.

The only overt act specified in the indictment was the same crack deal underlying the

state conviction.  (Hasan Decl. Ex. C.)  Lopez pleaded guilty before this Court on

September 27, 2007, and was sentenced the following June.  New York State credited all

of the time Lopez spent in federal pretrial custody (from November 4, 2004, to June 19,

2008) against his state sentence.  However, neither state nor federal authorities awarded

Lopez any GCT for the time he served from August 11, 2000 to June 19, 2008.[1]

In the nine month period between the federal plea date and the sentencing date,

the Court held a conference and received supplemental briefing on whether Lopez should

receive sentencing credit (as distinct from GCT) for the time already served in either state

or federal custody, given that the state and federal convictions concerned the same

conduct.  The Court ultimately decided Lopez was entitled to an adjustment for all the

time previously served pursuant to U.S.S.G. § 5G1.3(b), which instructs courts to reduce

a federal sentence by any period of imprisonment already served on an undischarged

sentence for the same offense conduct.  *See United States v. Fermin*, 252 F.3d 102, 107

(2d Cir. 2001).[2]  Accordingly, the Court imposed the following sentence at the sentencing

hearing:

It is the judgment of this court that the defendant Frank Lopez is hereby
committed to the custody of the United States Bureau of Prisons, to be

---

[1] *See* Pet. Ltr. dated Feb. 9, 2010; Resp. Ltr. dated Feb. 17, 2010.

[2] Specifically, the version of § 5G1.3(b) applicable to Lopez's sentencing required an adjustment for prior
time served on "offense(s) that [were] fully taken into account in the determination of the offense level for
the instant offense."  U.S.S.G. § 5G1.3(b) (2000).  As interpreted by the Second Circuit, this version of §
5G1.3(b) applied where a defendant received "a state conviction for attempted criminal sale of a controlled
substance and a federal conviction for conspiracy to distribute [the same substance]."  *United States v.
Williams*, 260 F.3d 160, 167 (2d Cir. 2001).  At sentencing, the government conceded that the relationship
between Lopez's state and federal convictions brought him within the scope of § 5G1.3(b).  (Hasan Decl.
Ex. E at 8:1 – 9:2.)

> imprisoned for a term of 132 months concurrent with the undischarged
> term of imprisonment on his state narcotics convictions and with a credit
> for time served in state and federal custody from [August] 11, 2000.

(Sentencing Tr., Hasan Decl. Ex. E at 17:10-15.)[3]

Since the federal sentencing, Lopez has spent time in three different institutions. First, he briefly returned to state custody, where he completed his state sentence on or about December 31, 2008.  (Return ¶ 10.)  Pursuant to the Court's order that the federal sentence run concurrently with the state sentence, this period in state custody counted against both sentences, and pursuant to BOP policy—which does not condition GCT eligibility upon custody in a federal institution—Lopez accrued GCT during this six-month period.  (Kelly Decl. Ex. 7.)  Next, the BOP resumed custody of Lopez and assigned him to a maximum security prison in Beaumont, Texas to serve the remainder of his federal sentence.  Despite this assignment, however, Lopez has spent much of his time since returning to federal custody at Metropolitan Correctional Center ("MCC") in Manhattan, where he was incarcerated at the time he filed his § 2241 petition and where he remains now.  (Pet. at 1; Resp. Br. at 1.)

The disputed issue is whether, under the GCT statute, Lopez may receive GCT for good behavior during time served in either state or federal custody before the federal sentence date.  The statute reads, in pertinent part,

---

[3] The Court also issued a Judgment and Commitment Order that calculated the precise length of the remaining period of incarceration:

> (132) ONE HUNDRED THIRTY-TWO months incarceration to be served concurrently
> with the undischarged term of defendant's State sentence.  [Minus] (-94) NINETY-
> FOUR MONTHS served—including credit for state sentence.  Total incarceration
> remaining (38) THIRTY-EIGHT MONTHS.  This sentence is not a departure because the
> defendant has been credited under 5G1.3(b) and (c) with time served on state charge.

(Kelly Decl. Ex. 1 at 2.)

> [A] prisoner who is serving a term of imprisonment of more than 1 year . . . *may receive credit toward the service of the prisoner's sentence*, beyond the time served, *of up to 54 days at the end of each year of the prisoner's term of imprisonment*, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations . . . .

18 U.S.C. § 3624(b) (emphasis added).  Lopez argues that his eight years of presentence time[4] qualify for GCT because that time comprised part of a 132-month "term of imprisonment" imposed by the plain language of the Court's sentencing order.  (*See* Hasan Decl. Ex. E at 17 ("Frank Lopez is . . . to be imprisoned for a term of 132 months . . . with a credit for time served in state and federal custody from [August] 11, 2000.").)  Put differently, Lopez interprets the statutory phrase "term of imprisonment" to encompass all of the time he has served for the federal offense.  According to the sentencing order, he argues, that period includes the presentence time.  The BOP disagrees for three primary reasons.  First, it argues that temporal language in the statute hinting at an annualized review process—phrases like "54 days *at the end of each year*"—restricts the scope of GCT eligibility to time served after a sentence is imposed.  (Resp. Br. at 18 ("The plain language of the GCT statute contemplates a 'real time' analysis of GCT, one year at a time, providing for both a temporal limitation and a scope limitation on GCT calculation.").)  Second, the BOP argues that "term of imprisonment" is synonymous with "sentence," and that GCT is thus only available for time served on a federal sentence itself.  (Resp. Br. at 13.)  Although Lopez received an adjustment for the eight years of presentence time, the BOP contends that time did not form part of his

---

[4] Most of the time Lopez served before the federal sentence date was "pretrial" time for federal purposes, in the sense that it preceded his conviction and sentencing on the federal offense, but not for state purposes, because he had already been convicted of the state offenses.  The Court employs the term "presentence" to describe all of the time served before the federal sentencing, following the Second Circuit's language in a similar case.  *Werber v. United States*, 149 F.3d 172, 176 (2d Cir. 1998).

actual "sentence," as defined by federal statute and § 5G1.3(b).  Finally, the BOP argues

that a different statute, 18 U.S.C. § 3585(b), bars it from awarding GCT for Lopez's

presentence time, because that time was also credited against his state sentence.  (Resp.

Br. at 10; *see United States v. Labielle-Soto*, 163 F.3d 93, 99 (2d Cir. 1998) (citing 18

U.S.C. § 3585(b))).

      The disagreement carries large potential consequences.  If Lopez is correct that all

of his presentence time is eligible for GCT, he could be released as early as March 24,

2010 (depending on his disciplinary record).  On the other hand, if the BOP is correct,

Lopez will remain in federal custody for at least another year, until March 22, 2011.

      It is important to note that the issue in this case concerns only the range of time

for which Lopez is *eligible* for GCT under the statute.  Whatever the correct time range, it

falls to the BOP to evaluate Lopez's conduct to determine the amount of GCT he has

actually earned.  18 U.S.C. § 3624(b); *see Sash v. Zenk*, 428 F.3d 132, 135 (2d Cir.

2005).  Thus, though Lopez's conduct will affect his ultimate release date, it is not

relevant to this petition, which raises a question of pure statutory interpretation.  Only one

entry in Lopez's disciplinary record bears upon the issues here, and not because of

anything it reflects about Lopez, but because it is relevant to the BOP's argument: in

2005, three years before it contends Lopez even became eligible for GCT, the BOP

disciplined him for an altercation with another inmate in federal detention by declaring

that it would debit him 21 days of GCT, a disciplinary measure the BOP now argues it

did not have the power to impose since (in its view) no GCT was accruing.[5]

---

[5] In a post-argument exchange of letters, the government submitted records from the New York Department
of Correctional Services showing that Lopez accumulated a lengthy disciplinary record during his four
years in state custody.  (Resp. Jan. 27, 2010 Ltr.)  Though the court finds that those four years (about half
of the total presentence time) form part of Lopez's "term of imprisonment" under § 3624(b), the records

### *Administrative Remedy Process*

Before he filed this petition, Lopez attempted to resolve his grievance over GCT computation administratively.  At his request, his counsel articulated his position on the GCT statute to the Assistant United States Attorneys who had prosecuted him.  (Hasan Decl. Ex. I.)  The prosecutors forwarded the issue to the BOP's Office of General Counsel, which responded by letter that the BOP's calculations were correct and that Lopez was ineligible to accrue GCT until the date of his federal sentencing.  (Hasan Decl. Ex. J.)

Lopez thereafter sought relief through the BOP's Administrative Remedy Program ("ARP"), which has four steps: (1) informal presentation of the grievance to the facility's staff; (2) a written remedy request to the Warden; (3) an appeal to the BOP Regional Director; and (4) an appeal to the BOP's Office of General Counsel.  28 C.F.R. §§ 542.13, 542.14, 542.15.  Lopez climbed through the first three levels without obtaining relief: he attempted unsuccessfully to resolve his concerns with the staff at Beaumont; the Warden denied his remedy request; and the Regional Director issued a written denial of his appeal.  (Mason Decl. Ex. 2 – 5.)  Lopez next submitted an appeal to the Office of General Counsel.  That office rejected his application without considering its merits because Lopez had attached three continuation pages to the appeal form, in violation of 28 C.F.R. § 545.15(b)(3), which only permits one continuation page.  (Mason Decl. ¶ 6.)  Rather than correct and resubmit the appeal, Lopez filed a habeas petition under § 2241 on September 23, 2009, seeking an order directing the BOP to recalculate his GCT based on his entire term of incarceration, including all of the presentence time,

---

suggest that Lopez may not have earned much, if any, GCT during that period.  As indicated, however, the issue of how much GCT Lopez has actually earned through good behavior—as distinct from how much he is eligible to earn—is not before the Court.

and to transfer him to a halfway house to complete the remainder of his sentence.[6] (Pet. at 1.)

Because Lopez is incarcerated at MCC, which is within the Southern District of New York, the Court has jurisdiction over his § 2241 petition. *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004).

## II

The BOP argues that the petition should be dismissed because Lopez did not exhaust his administrative remedies, given that he failed to re-submit his appeal to the General Counsel after it was rejected for containing two extra continuation pages.

"[F]ederal prisoners must exhaust their administrative remedies prior to filing a petition for habeas relief." *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001). The exhaustion requirement for § 2241 petitions, however, is prudential, not statutory, and may be excused at the court's discretion. *Zucker v. Menifee*, 03 Civ. 10077(RJH), 2004 WL 102779, at *4 (S.D.N.Y. Jan. 21, 2004); *Snyder v. Angelini*, 07 CV 3073 (NGG), 2008 WL 4773142, at *2 (E.D.N.Y. 2008). Courts excuse failures to exhaust when "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003) (internal quotations omitted).

Lopez did not fail to exhaust his administrative remedies. He submitted petitions at all four levels of the ARP, including an appeal to the General Counsel. His failure to

---

[6] 18 U.S.C. § 3624(c)(1) gives the BOP discretion to transfer a prisoner to a halfway house for up to the final twelve months of his sentence. Therefore, if Lopez is correct that he should be released on March 24, 2010, he would already be eligible for such transfer.

re-submit this appeal after the General Counsel rejected it because he attached two extra pages does not constitute a failure to exhaust.  As another court has seen fit to remind the BOP, "[a]dministrative exhaustion is not a game of legal gotcha."  *Huff v. Sanders*, 632 F. Supp. 2d 903, 908 (E.D. Ark. 2008) (quoting *Schneider v. Delo*, 85 F.3d 335, 339 (8th Cir. 2008)).  The purpose of exhaustion is to give an agency notice of a grievance and an opportunity to address it, *id.*, and Lopez's three-page written submission to the General Counsel satisfied that purpose.[7]

In any event, even if Lopez did fail to exhaust, his failure would be excused for futility.  Before Lopez initiated his ARP petition, the BOP's Office of General Counsel stated in a letter to his counsel that, pursuant to the BOP's interpretation of the GCT statute, Lopez did not begin to accrue GCT until his federal sentence date.  (Hasan Decl. Ex. J.)  Moreover, the BOP has advanced the same position in three prior litigations involving prisoners serving § 5G1.3(b) sentences.  *Ross v. Fondren*, No. 08-1325, 2008 WL 4745671 (D. Minn. Oct. 29, 2008); *Kelly v. Daniels*, 469 F. Supp. 2d 903, 904 (D. Or. 2007); *Hickman v. United States*, No. 05 Civ. 1842 (PAC), 2006 WL 20489, at *2 (S.D.N.Y. Jan. 4, 2006).  Thus, the BOP's rejection of Lopez's ARP petition follows a well-established agency policy on GCT computation.  In similar circumstances, where an agency-wide policy forecloses an administrative petition regardless of case-specific considerations, Courts have waived exhaustion as futile.  *See, e.g., Scott v. Lindsay*, No.

---

[7] The BOP contends that it must enforce the one-page limit strictly to avoid being inundated with thousands of additional pages in prisoner appeals each month.  (Resp. Br. at 7 n.2.)  The Court, which is no stranger to paper or to prisoner litigation, finds this argument unavailing, not least because the BOP previously failed to enforce the page limits against Lopez when he submitted his appeal to the Regional Director. (Mason Decl. Ex. 4, 5.)  Also, the BOP ignores that Lopez submitted his hand-written appeal without the assistance of counsel.  *See In re Sims*, 534 F.3d 117, 133 (2d Cir. 2008) ("[A] party appearing without counsel is afforded extra leeway in meeting the procedural rules governing litigation . . . ") (internal quotations omitted); *cf. Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004) ("Uncounseled inmates navigating prison administrative procedures without assistance cannot be expected to satisfy a standard more stringent than notice pleading.").

07 CV 2622 (JG), 2007 WL 2585072, at *2 (E.D.N.Y. 2007) ("Scott's pursuit of an administrative remedy would be futile, as the BOP's action in his case is pursuant to an agency-wide policy . . . ").  The Court deems it similarly prudent to waive any failure to exhaust here.

### III

Before analyzing the statute, the Court must determine what level of deference to give the BOP's interpretation.  Should it receive *Chevron* deference, under which the interpretation will be upheld so long as it as "reasonable," or the lesser *Skidmore* deference, under which the BOP's analysis will be reviewed for its "persuasiveness"?  The choice hinges upon the form of the BOP's interpretation.  *See United States v. Mead Corp.*, 533 U.S. 218, 230-31 (2001).  Here, the BOP expressed its interpretation of § 3624(b) in two ways: the Regional Director's written denial of Lopez's ARP petition, and the letter from the Office of General Counsel to Lopez's counsel.  Both sources qualify for *Skidmore* deference, and the letter clearly does not qualify for *Chevron* deference.  *Reno v. Koray*, 515 U.S. 50, 61 (1995) (BOP "program statement" is "entitled to some deference"); *Zucker*, 2004 WL 102779 at *5 (*Skidmore*, but not *Chevron*, deference for BOP policy memorandum); *see also Cmty. Health Center v. Wilson-Coker*, 311 F.3d 132, 138 (2d Cir. 2002) ("even relatively informal [agency] interpretations, such as letters from regional administrators, warrant respectful consideration" where the statute is complex and the agency possesses "considerable expertise") (internal quotations omitted).

The more difficult question is whether the ARP decision qualifies for the *Chevron* standard.  The ARP is a process of informal adjudication—it does not involve notice-and-

comment procedures or the trial-type procedures that are the hallmark of formal agency adjudication—and as such, it implicates the murkiest region of the law on judicial deference.  In *Mead*, the Supreme Court suggested that informal agency pronouncements, including statutory interpretations issuing from informal adjudications, could qualify for *Chevron* deference under certain circumstances.  533 U.S. at 231 ("[A]s significant as notice-and-comment is in pointing to *Chevron* authority, the want of that procedure here does not decide the case, for we have sometimes found reasons for *Chevron* deference even when no such administrative formality was required and none was afforded.").  But the *Mead* court declined to apply *Chevron* deference to the particular informal pronouncement before it—a tariff classification by the United States Customs Service— and the case did little to identify what types of informal adjudications, specifically, *would* qualify for the protective standard.  *Id*.  The pivotal factor that the decision identifies is whether Congress gave "some indication" that it intended to delegate power to the agency to make decisions with the "force of law" through an informal process.  *Id.* at 226-27.

Much has been written of the ambiguity *Mead* inserted into the *Chevron* doctrine, *see* Lisa S. Bressman*, How* Mead *Has Muddled Judicial Review of Agency Action*, 58 Vand. L. Rev. 1443 (2005), and both the First and Second Circuits recently confirmed that this ambiguity persists.  *Doe v. Leavitt*, 552 F.3d 75 (1st Cir. 2009); *Sai Kwan Wong v. Doar*, 571 F.3d 247 (2d Cir. 2009).  In *Doe v. Leavitt*, which concerned the proper level of deference for a decision by the Secretary of Health and Human Services ("HHS") that issued from an informal adjudication, the First Circuit sidestepped *Mead* by finding that the Secretary's interpretation would survive either *Skidmore* or *Chevron* scrutiny.

Along the way, the court described *Mead*'s treatment of informal adjudications as a "gray area" in the law that presented a "legal conundrum." *Doe v. Leavitt*, 552 F.3d at 80. The Second Circuit took the same route in *Sai Kwan Wong*, where it upheld a statutory interpretation in an informal HHS rule. 571 F.3d at 259 ("*Mead* . . . raises an interesting question about the possibility of according *Chevron* deference in this case, [but] in the end we are content . . . that . . .affirmance would be warranted under either standard."); *see also Encarnacion v. Astrue*, 568 F.3d 72, 79 (2d Cir. 2009) (avoiding choice between *Skidmore* and *Chevron*); *Bressman*, 58 Vand. L. Rev. at 1446 ("[Circuit] courts engage in Mead-induced Chevron avoidance."). The lesson—to avoid *Mead* when you can—offers little guidance here, where the choice between deference levels is crucial.

There are some beacons in the fog. The first comes from *Mead*'s own application of the precept that agency interpretations, formal or informal, should be accorded *Chevron* deference only if they are issued through a procedure that Congress "indicated" might give rise to pronouncements carrying the force of law. 533 U.S. at 226-27. The *Mead* court did not apply *Chevron* deference to the Customs Service's tariff classifications even though the agency's implementing statute contemplated the issuance of such classifications and described them as "binding" and "necessary to secure uniformity." *Mead*, 533 U.S. at 232. In contrast, as far as the Court is aware, the sentencing statutes that the BOP administers make no mention of any process for adjudicating prisoner petitions; rather, the BOP created that process under a generalized statute authorizing agencies to promulgate regulations governing their own internal affairs. 28 C.F.R. § 542.15 (citing 5 U.S.C. § 301). The argument that Congress intended BOP adjudications of prisoner petitions to carry the force of law is therefore

weaker than the agency argument in *Mead*.  If tariff classifications do not warrant *Chevron* deference, then *a fortiori* BOP statutory interpretations issued pursuant to the ARP do not warrant it either.

Also instructive is the Second Circuit's holding that non-precedential decisions by the Board of Immigration Appeals ("BIA") do not receive *Chevron* deference.  *Rotimi v. Gonzales*, 473 F.3d 55, 57 (2d Cir. 2007).  The BIA issues those opinions on appeal from a formal adjudication process that is far more extensive than the informal ARP.  The Second Circuit nonetheless denied the non-precedential BIA opinions *Chevron* deference, finding it determinative that the BIA communicated no intention to treat the opinions as "carry[ing] the force of law."  *Id.* at 58 (quoting *Mead*, 533 U.S. at 227).  Similar to the situation in *Rotimi*, BOP regulations do not suggest that decisions of prisoner petitions have precedential force or are otherwise intended to "carry the force of law."  *Id*.

Finally, the decision not to apply *Chevron* deference here finds further support in cases holding that BOP statutory interpretations expressed through other, similarly informal means—namely, policy memoranda and internal guidelines—do not qualify for *Chevron*.  *Reno*, 515 U.S. at 61; *Zucker*, 2004 WL 102779 at *5.  Considering these authorities, the Court holds that the statutory interpretation in the Regional Director's written denial of Lopez's ARP petition warrants *Skidmore* rather than *Chevron* deference.  Furthermore, Lopez's supposed failure to exhaust his administrative remedies has not deprived the BOP of a higher level of deference, because *Skidmore* would remain the applicable standard even if the Office of General Counsel had reiterated its statutory interpretation in a decision denying Lopez's petition on its merits, rather than on a procedural enforcement of page limits.  There is simply no indication, in the statutes or in

13

the BOP regulations, that an ARP decision carries the force of law, regardless of whether the decision comes from a Regional Director or the Office of General Counsel.

Respondents point out that the Second Circuit has previously applied *Chevron* deference to a BOP interpretation of the GCT statute. *Sash v. Zenk*, 428 F.3d 132 (2d Cir. 2005). *Sash*, however, is inapplicable. The issue in that case was whether GCT should be calculated based on the time a prisoner "actually serves," or instead based on the length of the sentence imposed. *Id*. at 133. The latter interpretation, preferred by prisoners, results in a slightly longer sentence reduction because it awards GCT for time a prisoner does not actually have to serve in light of the GCT reduction itself. *Yi v. Federal Bureau of Prisons*, 412 F.3d 526, 529 (4th Cir. 2005); *Pacheco-Camacho v. Hood*, 272 F.3d 1266, 1268 (9th Cir. 2000) (explaining that the "sentence imposed" interpretation results in six additional days of GCT on a sentence of one year and one day). The BOP had promulgated a regulation adopting the less generous "time actually served" interpretation, 28 C.F.R. § 523.20 ("the Bureau will award . . . 54 days credit for each year served . . ."), which the Second Circuit, following other circuit courts, upheld as reasonable under *Chevron*.[8]  *Sash*, 428 F.3d at 136-38. Unlike § 523.20, the ARP decision is not a legislative rule subject to notice-and-comment procedures or any other formal processes. Nor does § 523.20 address the question of statutory interpretation in this case. The regulation says that prisoners are only eligible for GCT on time they actually serve, but it does not decide the question Lopez raises: whether, and under what

---

[8] Every circuit but the D.C. Circuit has considered and upheld the BOP's "time actually served" interpretation, though the Supreme Court has granted *certiorari* to review the most recent of these opinions. *Tablada v. Thomas*, 533 F.3d 800 (9th Cir. 2008), *cert. granted*, *Barber v. Thomas*, No. 09-5201 (U.S. Nov. 30, 2009); *see also* Brief in Opposition to Petition for Writs of Certiorari, *Barber*, No. 09-5201, at 4 (listing other circuit opinions). *Tablada* found that the regulation codifying the interpretation was invalid because the BOP had failed to articulate a supporting rationale in the administrative record, but the Ninth Circuit proceeded to uphold the "time actually served" rule by applying *Skidmore* deference to a BOP program statement that advanced the same interpretation. *Tablada*, 533 F.3d at 805-09.

circumstances, periods of incarceration that predate federal sentencing count as "time actually served" for GCT purposes.  28 C.F.R. § 523.20.  As a result, the ARP decision and the Office of General Counsel letter—rather than the regulation at issue in *Sash*—are the most deference-worthy pronouncements of the agency's opinion on this particular issue.  Those pronouncements do not warrant *Chevron* deference.  *See Rotimi*, 473 F.3d at 57.

## IV

Under *Skidmore* deference, the BOP's interpretation is "entitled to respect according to its persuasiveness." *Encarnacion*, 568 F.3d at 78.  "Persuasiveness" turns upon the following factors: "the thoroughness evident in the agency's consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." *Sai Kwon Wong*, 571 F.3d at 260 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).  *Skidmore* deference is not an "unabashed tautology"—despite the language of the test, it does not mean that the Court defers only when persuaded that the agency is correct, for that "would not be deference at all." *Doe v. Leavitt*, 552 F.3d at 81.  Rather, *Skidmore* requires recognition of the agency's expertise in interpreting the statutes it administers, and it instructs deference where the agency applies that expertise to a problem of statutory interpretation through reasoning that is thorough, consistent with its other pronouncements, and legally valid. *Id*.

## A.

A *Skidmore* analysis must begin as a *Chevron* analysis does, with consideration of the text of the statute. *Sai Kwon Wong*, 571 F.3d at 260 (citing *Public Employees Ret.*

*Sys. of Ohio v. Betts*, 492 U.S. 158, 171 (1989) ("[N]o deference is due to agency interpretations at odds with the plain language of the statute itself")).  The GCT statute reads, in pertinent part, "a prisoner . . . may receive credit toward the service of the prisoner's sentence . . . of up to 54 days at the end of each year of the prisoner's term of imprisonment . . . ."  18 U.S.C. § 3264(b).  Whether Lopez's presentence time qualifies for GCT thus depends on the bounds of his "term of imprisonment," because the statute says prisoners may receive GCT for each year of that "term."  At first glance, then, the controlling question seems simple: what does "term of imprisonment" mean?  But the issue is an elusive shape-shifter.  It flashes superficial simplicity, yet the phrase "term of imprisonment," when applied to Lopez's circumstances, implicates a morass of sentencing guidelines, federal regulations, agency policy statements, canons of interpretation, and penal statutes with little concept of or regard for each other.  And though both parties advance plain meaning arguments, the issue easily evades the confines of the plain import of the statutory language itself.  The Second Circuit and other federal appellate courts have in fact already found the phrase "term of imprisonment" ambiguous, albeit with respect to how GCT should be computed (*i.e.*, whether it should be based on time actually served or the length of the sentence imposed). *See Pacheco-Camacho*, 272 F.3d at 1268 ("The words of the statute do not provide clear guidance as to what the phrase 'term of imprisonment' means."); *Sash*, 428 F.3d at 136 ("We join our sister circuits in holding that § 3624(b) is ambiguous . . . .").  Determinations of statutory ambiguity are issue-specific, *Chevron*, 467 U.S. at 842 (ambiguity turns on "whether Congress has directly spoken to the precise question at issue"), and this case presents a different issue than *Sash* and the related cases.  Thus, the

circuit opinions do not actually settle the question of statutory ambiguity here, but they certainly foreshadow this case's complications.

Lopez argues that the plain meaning of § 3624 contravenes the BOP's determination that the time he served before his federal sentencing date is not eligible for GCT. He contends that "term of imprisonment" means the period of incarceration that a prisoner serves for the federal offense. Relying on the following language from the Court's oral sentencing order, he asserts that his eight years of presentence incarceration in state and federal prisons clearly comprise part of the punishment for his federal crime:

> It is the judgment of this court that the defendant Frank Lopez is hereby committed to the custody of the United States Bureau of Prisons for a term of 132 months concurrent with the undischarged term of imprisonment on his state narcotics convictions, and with a credit for time served in state and federal custody from [August] 11, 2000.

(Hasan Decl. Ex. E at 17.) Because the statute does not exclude time served before the sentencing date or in state custody from eligibility, Lopez argues that the sentencing order plainly requires that the BOP consider his presentence time for GCT purposes.

The argument has merit, though not as a matter of plain meaning. It would certainly be reasonable to conclude that, because the sentencing court imposed a 132-month term for the federal offense and then applied the presentence time against that term, the presentence time forms part of the "term of imprisonment" for GCT purposes. Under this framework, "term of imprisonment" would mean all of the time served as punishment for the federal crime. The interpretation boasts an attractive simplicity, and one district court has already embraced it. *See Kelly v. Daniels*, 469 F. Supp. 2d 903, 904 (D. Or. 2007) ("[I]t is clear that the sentencing judge intended to impose a 70-month term of imprisonment on petitioner's . . . conviction . . . . Because the 28 months in state prison is counted as a portion of his total federal sentence, petitioner should have accrued

GCT during that period.").  The problem with Lopez's argument, however—at least with

respect to the plain meaning issue—is that the statute permits other interpretations.

Indeed, respondents propose a narrower but also possible definition of "term of

imprisonment;" they argue that the phrase is synonymous with "sentence," such that it

encompasses only time served on the federal sentence itself, beginning on the federal

sentencing date.  Other district court opinions endorse this reading of the statute.

*Hickman v. United States*, No. 05 Civ. 1842 (PAC), 2006 WL 20489, at *2 (S.D.N.Y.

Jan. 4, 2006) ("[The GCT statute] makes clear that the sentence that is potentially subject

to credit is the sentence the prisoner is currently serving-*i.e.*, the federal sentence."); *Ross

v. Fondren*, No. 08-1325, 2008 WL 4745671 (D. Minn. Oct. 29, 2008) (upholding BOP

interpretation "that GCT credit is calculated based upon the actual time a prisoner serves,

beginning on the date the federal sentence is imposed.").  Though the two interpretations

may seem indistinguishable initially, respondents assert that the amount of time a

prisoner serves for a federal offense does not always match the duration of his federal

sentence.  In Lopez's case, for example, respondents argue that his sentence does not

include the eight presentence years.  The Guidelines provision under which he was

sentenced, U.S.S.G. § 5G1.3(b), permits an adjustment for time already served on a

conviction for the same underlying conduct, but, according to respondents, it excludes

that prior time served from the scope of the federal "sentence" itself.  *See* § 5G1.3 cmt.

(2)(D); *see infra* Section V.  Thus, though Lopez received an adjustment for the eight

years he had already served, those eight years do not technically form part of his

"sentence," at least in respondents' view.  (Resp. Br. at 11-13 ("[T]he shortened [§

5G1.3(b)] penalty starts as of the date of the federal sentencing . . . .")  Under this

analysis, if the length of Lopez's sentence delimits his "term of imprisonment" for GCT purposes under § 3624(b)—a plausible contention, especially because "sentence" and "term of imprisonment" are often used interchangeably in the federal penal statutes[9]—he is not entitled to GCT for any of the presentence time.  The language of § 3624 itself betrays no predilection for either this reading or Lopez's alternate formulation (that "term of imprisonment" corresponds to all the time served for the federal offense).  The statute is therefore ambiguous in this regard.  *See Sash*, 428 F.3d at 136 (statutory language ambiguous where "at least two reasonable interpretations" exist).

For their part, respondents also make a plain meaning argument, though not about the phrase "term of imprisonment" itself.  They contend the language of § 3624 requires that the agency review prisoner conduct on an annual basis, thereby implicitly barring the BOP from granting GCT for good behavior exhibited more than a year in the past.  Respondents rely on fragments of temporal language in the statute, italicized below:

> [A] prisoner . . . may receive credit . . . of up to 54 days *at the end of each year* of the prisoner's term of imprisonment, *beginning at the end of the first year of the term*, subject to a determination by the Bureau of Prisons that, *during that year*, the prisoner has displayed exemplary compliance with institutional disciplinary regulations . . . *Credit that has not been earned may not later be granted* . . . .

18 U.S.C. § 3624(b) (emphases added).  Respondents assert that this "temporal limitation," aside from being grounded in the statute, makes administrative sense.  It would impose a severe burden on the BOP, they claim, to have to award GCT for presentence custody, particularly in a state facility, because the agency would need to reach years into the past and across institutional systems to obtain and review disciplinary records.  (Resp. Br. at 19-20.)

---

[9] *White v. Scibana*, 314 F. Supp. 2d 834, 839 (W.D. Wis. 2004), *rev'd*, 390 F.3d 997 (7th Cir. 2004).

Like Lopez's plain meaning argument, this reading of the statutory language has merit, but it does not explain away the statute's ambiguity. By stating that prisoners may receive up to 54 days of GCT "at the end of each year," the statute does suggest that the BOP should make GCT determinations on an annual basis. Moreover, such an annualized review process would seem incongruous with an interpretation requiring the BOP to review conduct from years earlier, before the sentence date and before it became certain that the prisoner would receive a federal sentence to which a GCT award might apply. However, though the temporal language favors the agency's position over Lopez's, it does not forthrightly address the "precise question at issue"—whether presentence time should be eligible for GCT—nor does it suggest that Congress contemplated the issue. *Chevron*, 467 U.S. at 842. Rather, there is more of an accidental correspondence between the language and the issue of presentence custody. The temporal language suggests (without expressly stating) that Congress believed it would be more efficient for the BOP to review inmate conduct every year, rather than waiting for records and memories to become stale. That arrangement makes perfect sense where a prisoner has already been sentenced: given that it is already certain in such circumstances that a conduct review will eventually become necessary for GCT purposes, there is little reason to conduct that review at intervals wider than one year. In contrast, however, the situation in which a prisoner serves presentence time for the same conduct on which he is eventually sentenced raises unique issues. The passage of time between the first presentence year and the eventual post-sentencing GCT review could pose administrative challenges—particularly in a case like Lopez's, which would require looking back all the way to August 2000—but policy considerations may nonetheless

20

justify making presentence detention GCT-eligible.  To name one such consideration,

causing prisoners in presentence custody to be aware that, if sentenced, they will be

rewarded for good conduct during the presentence incarceration would seem to logically

advance the statute's objective of "ensur[ing] administrative order in prison."  *Sash*, 428

F.3d at 134-35.  Conversely, it would not comport with the statute's purpose to leave

prisoners in presentence custody without a GCT-based incentive to follow prison rules.

Nothing in the statute betrays consideration—one way or the other—of this or other

concerns relevant to presentence custody.

Curiously, the BOP has itself determined that proper application of § 3624

requires, in some circumstances, granting GCT for time served before the federal

sentence date, notwithstanding the temporal language on which respondents now rely.

The agency has promulgated a regulation, 28 C.F.R. § 523.17(*l*), under which it awards

GCT for time spent in pretrial detention.  28 C.F.R. § 523.17(*l*) ("A pretrial detainee . . .

may be recommended for good time credit.  This recommendation shall be considered in

the event that the pretrial detainee is later sentenced on the crime for which he or she was

in pretrial status."); *United States v. Payton*, 159 F.3d 49, 62 (2d Cir. 1998) ("[Defendant]

has in fact been awarded 108 days of good time credit, the maximum allowable, for his

time in [state and federal] pretrial custody.").  Furthermore, respondents have confirmed,

in a post-argument letter to the Court, that the BOP's practice is to award GCT for

pretrial detention "regardless of whether it has been served in a federal or state facility."

(Resp. Ltr. dated Nov. 23, 2009 at 2 n.1.)  Thus, BOP regulations themselves demonstrate

that the statute can be reasonably interpreted to permit GCT for time served before the

federal sentence date, whether in federal or state custody.   The temporal language therefore does not resolve the statutory ambiguity.  *See Sash*, 428 F.3d at 136.

## B.

Because the language of § 3624 does not plainly speak to whether Lopez's "term of imprisonment" includes his presentence time, the Court proceeds to consider the agency's reasons for excluding that time from the GCT computation.  Though answers do not come easily in this case, the agency's analysis contains certain flaws.  Chief among these is a complete failure to account for its own pretrial detention regulation (§ 523.17(*l*)), which, contrary to the agency's position in Lopez's case, recognizes at least in some situations that prisoners may receive GCT for periods of detention prior to the federal sentencing date.  The nub of this case—the core issue it presents—is whether Lopez's circumstances justify deviation by the BOP from its own policy of granting GCT for pretrial detention.  None of the BOP's evaluations of Lopez's case—the General Counsel's letter to his lawyer, the ARP decisions, or even the brief respondents submitted to the Court—mention § 523.17(*l*), much less attempt to distinguish it from the determination that Lopez is not entitled to GCT for the eight years of state and federal detention served before his federal sentencing date (all of which the sentencing court incorporated into the "term of imprisonment" it imposed).[10]  The agency either missed the issue or opted not to explain itself.  Either way, its opinion is entitled to little deference under *Skidmore*.  *See Sai Kwon Wong*, 571 F.3d at 260 (persuasiveness turns on "the thoroughness evident in the agency's consideration").

---

[10] Indeed, at the hearing on Lopez's petition, respondents' counsel indicated that pretrial detainees never received GCT in any circumstance.  (Hr'g Tr. at 13 – 14.)  In a post-hearing submission, Lopez brought § 523.17(*l*) to the Court's attention.  (Pet. Ltr. dated Nov. 18, 2009 at 2.)  Respondents' counsel then acknowledged the regulation in a reply letter.  (Resp. Ltr. dated Nov. 23, 2009 at 2 n.1.)

Beyond what it lays bare about the thoroughness of the agency's reasoning, § 523.17(*l*) also impacts the *Skidmore* analysis in a more substantive way.  The regulation conflicts with both of the agency's interpretations of the language of § 3624: (i) the temporal language argument, and (ii) the argument that "term of imprisonment" is synonymous with "sentence."  With regard to the first argument, the regulation scuttles the contention that § 3624's temporal language, compounded by the administrative burdens of reviewing presentence conduct, militates against granting GCT for time served before a federal sentencing date.  The temporal argument provides no basis for distinguishing between pretrial detainees who do not have prior state convictions from detainees who, like Lopez, await resolution of federal proceedings while serving a state sentence in state or federal prison, or both (as Lopez did).  In either case, the administrative demands are the same once the detainee is sentenced and GCT calculation becomes necessary.  Though distinctions exist between Lopez's circumstances and those of a typical pretrial detainee—*e.g.*, the fact of the prior state conviction—the temporal argument does not implicate any such distinction.  If the BOP awards GCT for pretrial detention under normal circumstances (whether served in state or federal custody), the temporal language of § 3624 and related administrative concerns do nothing to explain why the agency should not also award it to Lopez.  *See Payton*, 159 F.3d at 62.

Secondly, the pretrial detention policy reflected in § 523.17(*l*) also conflicts with the agency's interpretation of "term of imprisonment"—*i.e.*, that a term of imprisonment begins on the date of federal sentencing and includes only time served during the federal "sentence," as defined by the penal statutes and sentencing guidelines.  Under § 523.17(*l*), however, pretrial detention is GCT-eligible so long as "the pretrial

detainee is later sentenced on the crime for which he or she was in pretrial status." §
523.17(*l*).  That is the case even though, by definition, pretrial detention precedes the
commencement of the sentence itself.  Though a prisoner may receive credit for time
served in pretrial detention under 18 U.S.C. § 3585(b)—much like Lopez received an
adjustment for presentence custody under § 5G1.3(b)—the federal sentence does not
technically begin until, at the earliest, the date it is imposed.  *See* BOP Program
Statement 5880.28, *Sentence Computation Manual*, at 1-13 ("**In no case can a federal
sentence of imprisonment commence earlier than the date on which it is imposed**.")
(emphasis in original); *Gonzalez*, 192 F.3d at 353 ("[A] sentence begins 'on the date the
defendant is received in custody . . . at the official detention facility at which the sentence
is to be served'") (quoting 18 U.S.C. § 3585(a)); 18 U.S.C. § 3585(b) ("A defendant shall
be given credit [under certain circumstances] toward the service of a term of
imprisonment *for any time he has spent in official detention prior to the date the sentence
commences* . . . .") (emphasis added).  Thus, despite its countervailing position in this
litigation, the BOP has already interpreted "term of imprisonment" to mean "time served
for the federal offense," not "time served during the federal sentence."  Under that
interpretation, Lopez's term of imprisonment would include the eight years he served
before the federal sentence date, because he received an adjustment to his sentence
reflecting that time served.[11]

---

[11] The BOP has not argued that a "credit" for pretrial detention under § 3585(b) differs in any relevant
respect from an "adjustment" under § 5G1.3(b); nor does the Court perceive any distinction that might
impact the GCT analysis.  Strictly speaking, neither mechanism incorporates the prior time served into the
scope of the federal sentence itself.  *See* 18 U.S.C. § 3585(b); U.S.S.G. § 5G1.3(b).  Moreover, as the Court
points out in the discussion of 18 U.S.C. § 3585(b), the Second Circuit has noted that a § 5G1.3(b)
adjustment functions like a pretrial detention credit.  *United States v. Rivers*, 329 F.3d 119, 122 (2d Cir.
2003).

As already noted, other district courts have agreed with the BOP's argument that the "term of imprisonment" for GCT purposes corresponds to time served on the federal sentence. Two such cases involved § 5G1.3(b) sentences similar to Lopez's. *Hickman v. United States*, 2006 WL 20489 (S.D.N.Y. Jan. 4, 2006); *Ross v. Fondren*, 2008 WL 4745671 (D. Minn. Oct. 29, 2008). *Hickman* and *Ross* both held that a prisoner who receives an adjustment for time served on a related state conviction under § 5G1.3(b) does not become eligible for GCT until the date the federal sentence is imposed. In *Hickman*, Judge Crotty reasoned that the petitioner could not receive GCT for the prior time served because it preceded the beginning of the federal sentence. 2006 WL 20489 at *2 ("A federal sentence . . . commences on the date the defendant is received in custody by federal officials. Hickman, thus, is not entitled to good time credit for time served for his state sentence.") (citations omitted). In *Ross*, the district court adopted a magistrate recommendation applying a similar rationale. 2008 WL 4745671 at *3 (upholding BOP interpretation "that GCT credit is calculated based upon the actual time a prisoner serves, beginning on the date the federal sentence is imposed.")

The Court respectfully disagrees with the analysis in these cases. *Ross* incorrectly applies *Chevron* deference without identifying a proper predicate, *id.*, and *Hickman* contains no deference analysis. 2006 WL 20489 at *2. More to the point, neither case considers the BOP's pretrial detention regulation, § 523.17(*l*), or the policy underlying that regulation. As the Court has explained, the BOP's refusal to award GCT for presentence time in the § 5G1.3(b) context clashes with its standard practice of awarding GCT for time in pretrial detention. Finally, as discussed *infra* in Section V, relying upon § 5G1.3(b)'s purported exclusion of presentence time from the federal

25

"sentence" to interpret other statutes with distinct purposes, like § 3624, conflicts with Second Circuit precedent.  *United States v. Rivers*, 329 F.3d 119, 122 (2d Cir. 2003) (holding that time credited through a § 5G1.3(b) adjustment counted toward satisfaction of a mandatory minimum sentence).  Therefore, despite *Hickman* and *Ross*, the Court finds unpersuasive the BOP's arguments that Lopez's § 5G1.3(b) sentence delimits the length of his term of imprisonment.[12]

The third argument the BOP advances—based on a different statute, 18 U.S.C. §3585(b)—fares no better.  Section 3585(b) governs sentencing credit for periods of prior custody.[13]  Courts construe the statute to forbid the BOP from applying a prior period of custody to a federal sentence if that prior period has already been credited against another

---

[12] Aside from *Hickman* and *Ross*, three other district courts have denied habeas petitions seeking GCT for presentence incarceration that was also credited to a state sentence.  *Montalvo v. United States*, 174 F. Supp. 2d 10 (S.D.N.Y. 2001); *Green v. United States*, No. 3:08 CV 681, 2009 WL 2982864 (N.D. Ohio Sept. 11, 2009); *Crampton v. Thomas*, No. 07-1883-BR, 2009 WL 1974481 (D. Or. July 7, 2009).  Though these cases similarly do not address the pretrial detention regulation, they contain factual distinctions that may alter the GCT analysis.  None of them involve a § 5G1.3(b) sentence.  In *Montalvo*, the petitioner received a downward departure for time served on an unrelated state conviction.  174 F. Supp. 2d at 11-12. Therefore, when Judge Koeltl declined to award Montalvo GCT "for time spent in state custody, before his federal sentence even began," he was referring to time served for separate offense conduct, not time served for the federal crime.  *Id.* at 15-16.  In *Green*, the petitioner was not eligible for a § 5G1.3(b) adjustment because his state sentence was already discharged; furthermore, the opinion does not indicate whether the prior state conviction was relevant to the federal conviction.  2009 WL 2982864 at *1-3 (referring to BOP practice regarding "previously-discharged state terms of imprisonment").  Where a prior sentence is fully discharged, the defendant may have already received credit for good conduct under state law.  *See infra* Section V at n.17.  In *Crampton*, the state sentence also appears to have been fully discharged.  2009 WL 1974481 at *1.  Moreover, the *Crampton* court, like the *Ross* court, improperly applied *Chevron* to uphold the BOP's position that GCT eligibility does not begin until "the date the federal sentence commences."  *Id.* at *3.

[13] § 3585(b) reads:

**Credit for prior custody.**—A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—

    **(1)**  as a result of the offense for which the sentence was imposed; or

    **(2)**  as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

*that has not been credited against another sentence*.

18 U.S.C. § 3585(b) (emphasis added).

sentence.  *See United States v. Labielle-Soto*, 163 F.3d 93, 99 (2d Cir. 1998).  The BOP

argues that because all of Lopez's presentence time was credited to his state sentence, it

would violate § 3585(b) to award him GCT for any of that time.  (Mason Decl. Ex. 5

("To award credit toward your [Lopez's] federal sentence that was applied to your state

term would be contrary to the intent of [§ 3585(b)].").)

The argument is unavailing for two reasons.  First, § 3585(b) concerns credit for

time actually served, not credit for good behavior.  They are quite different concepts.

The first is a criminal principle: §3585(b) aims to calibrate just punishment by giving

prisoners credit, once and only once, for time in prison.  *See Werber v. United States*, 149

F.3d 172, 179 (2d Cir. 1998).  On the other hand, the GCT statute, as the BOP readily

admits, is *administrative* in nature.  It seeks to "ensure administrative order in prison, not

to further the punitive goals of the criminal law."  *Sash*, 428 F.3d at 134-135.  That the

BOP cannot consider Lopez's pre-sentence time for purposes of § 3585 does not mean it

cannot consider that same time for GCT computation, because GCT is not an award of

"credit" under § 3585(b).  *See id*.  While it might frustrate concepts of just punishment

for the BOP to give a prisoner credit for time that another jurisdiction has already

counted, it certainly will not impair "administrative order" to encourage pretrial detainees

to behave well by giving them GCT, not as a computation of time they have actually

served on their sentence, but in recognition of good comportment.  Secondly, the precept

of § 3585(b)—that periods of prior custody should not be double-counted—is not

offended by awarding Lopez GCT for his presentence time.  *See Werber*, 149 F.3d at 179

("3585(b) bars double-counting"); *United States v. Arroyo*, 324 F. Supp. 2d 472, 474

(S.D.N.Y. 2004).  Although that period of detention counted against Lopez's state

27

sentence, he does not seek further credit here for the time actually served, but requests instead an award for any good conduct he displayed during that time.  This is not a case of double-dipping.  Here, it is impossible that he has benefited from a parallel bonus in the state system, because his federal sentence swallowed his concurrent state sentence. To put it differently, the concurrent state sentence ended in the middle of the federal sentence, so any state award of good conduct credit could not reduce Lopez's total term of custody for the underlying drug-related conduct.  Thus, even if it made sense to subject GCT computation to the requirements of § 3585(b), the computation Lopez seeks passes the test.

Furthermore, in seizing upon the prohibition in § 3585(b), respondents ignore that Lopez has nonetheless received credit for his eight years in presentence custody under U.S.S.G § 5G1.3(b), which instructs sentencing courts to adjust a federal sentence by any time already served on a prior, undischarged sentence for the same offense conduct.  In respondents' words, § 5G1.3(b) seeks to "address the seeming harshness of § 3585(b) in circumstances such as Lopez's."  (Resp. Br. at 11.)  While § 3585(b) prohibits the BOP from awarding credit for prior time served that has already credited been against another sentence—even where the previously imposed sentence and the federal sentence are for the same conduct—§ 5G1.3(b) alleviates the potential injustice of such a situation by directing courts to award credit where the BOP's hands are tied.  *See* U.S.S.G. § 5G1.3(b)(1)("the court shall adjust the sentence . . . *if the court determines that such period of [prior] imprisonment will not be credited to the federal sentence by the Bureau of Prisons . . . .* ") (emphasis added).  In Lopez's case, because he had already served 94 months (in state and federal prisons) on a state conviction for the same drug deal, he

could receive no credit from the BOP for that time as a result of the strictures of §
3585(b).   Nevertheless, his sentence was adjusted by this Court to reach a just result
under § 5G1.3(b); that is, he was sentenced to an "aggregate period" of 132 months with
a 94 month "adjustment," resulting in a remaining sentence of 38 months.   *See Rivers*,
329 F.3d at 122.   The Second Circuit has acknowledged that a § 5G1.3(b) adjustment
functions as a credit for time served, and the only reason it is not actually called a
"credit" is that it is awarded by the Court, not the BOP.   *Id.*[14]   Lopez's situation therefore
parallels that in which prisoners receive credit against their sentence for time in pretrial
detention under § 3585(b): in both situations, federal law gives prisoners the benefit of
time already served for the same conduct.   In the § 3585(b) scenario, of course, prisoners
also receive credit for good behavior pursuant to § 3624 and BOP regulations.   *See
Payton*, 159 F.3d at 62.   Given the parallel, one would think Lopez should similarly
receive GCT for the period of presentence incarceration for which he received a §
5G1.3(b) adjustment.   Moreover, it comports with respondents' own theory of the
purpose of § 5G1.3 to ensure that Lopez does not miss out on credit for good behavior
over an eight year span simply because the federal sentence followed the state sentence.
(Resp. Br. at 13 (citing *Witte v. United States*, 515 U.S. 389 (1995) ("§ 5G1.3 of the
Guidelines attempts to achieve some coordination of [multiple] sentences imposed [for
related conduct] . . . with an eye toward having such punishments approximate the total
penalty that would have been imposed had the sentences for the different offenses been
imposed at the same time . . . .")).)   But instead of following, or even addressing, this
reasoning, the BOP jams a square peg into a round hole by insisting that because §

---

[14] Moreover, *Rivers* clarifies that an adjustment under § 5G1.3(b) is not a downward departure from the
Guidelines range.   *Id.*

3585(b) precludes the *agency* from awarding credit for the prior time (though Lopez nonetheless receives the equivalent of credit via an adjustment), so it precludes a GCT award for that time.  This analysis is unthorough and unpersuasive.

        In sum, the BOP's interpretation, comprised of the three arguments addressed above, is unpersuasive because it fails to account for the regulation permitting GCT for pretrial detention, § 523.17(*l*), and because all three arguments conflict with that regulation to some extent.  Moreover, the BOP's position draws upon little actual agency expertise.  Rather than parse the implications of the different possible interpretations of § 3624, the agency premises most of its arguments upon flawed applications of different provisions—a sentencing guideline, § 5G1.3(b), which the agency does not administer, and an extraneous penal statute, § 3585(b).  Respondents make just one argument based on their knowledge of GCT administration—that factoring time served before the sentence date into the GCT calculation would impose administrative burdens—yet this baldly contradicts their own pretrial detention regulation.  The agency does not channel any such expertise into distinguishing prisoners like Lopez from standard pretrial detainees; it does not argue or present any facts to show, for example, that extending GCT eligibility to the presentence time of prisoners serving related state sentences would so significantly increase administrative burdens as to warrant deviation from the standard policy of awarding GCT for pretrial time in state and federal custody.  This failure to bring administrative expertise to the interpretive problem diminishes the degree of deference accorded to the BOP's decisions in Lopez's case.  To be sure, computation of overlapping sentences is a notoriously difficult business, *see, e.g.*, U.S.S.G. § 5G1.3(c) cmt. 3(D) (2009) ("[T]he court may be faced with a complex case in which defendant

may be subject to multiple undischarged terms of imprisonment that seemingly call for the application of different rules."), for which the BOP is uniquely well-equipped.  But under *Skidmore*, courts do not defer simply because an agency *possesses* expertise; rather, they defer where an agency *applies* its expertise thoroughly and consistently to a legal issue.  *Doe v. Leavitt*, 552 F.3d at 81.  The BOP has not done so here, and for that reason, its interpretation should be reviewed thoroughly but is not entitled to deference.

## V

Because the agency arguments do not persuasively address the question, the Court faces an unrefracted choice between two interpretations of "term of imprisonment."  For the purposes of calculating GCT, does the phrase encompass all the time a prisoner serves for the federal offense, including time served for which the prisoner received a credit or adjustment under § 3585(b) or § 5G1.3(b)?  Or does the date the federal sentence begins, as defined by the penal statutes and sentencing guidelines, determine the beginning, and thereby the length, of a defendant's term of imprisonment?  For two reasons, the Court adopts the former interpretation.  First, though the statutory language of § 3624 does not contradict either reading, the former is far more natural.  "Term of imprisonment" corresponds logically to the length of time a court determines a prisoner should serve for a particular crime.  Here, for example, because the sentencing court determined that Lopez should be "imprisoned for a term of 132 months," (Hasan Decl. Ex. E at 17), efforts to define his term of imprisonment as anything *other* than time served on those 132 months are necessarily strained.  *See Rivers*, 329 F.3d at 122 (considering the "aggregate period" of a §5G1.3(b) sentence to determine if it meets the mandatory minimum).  Indeed, viewed against the naturalness of Lopez's proposed

reading, the opposing interpretation seems pedantic.  To be sure, federal law indicates that a sentence begins no earlier than the date on which it is imposed, from which it is possible to infer, as the BOP does, that the length of a prisoner's sentence excludes pretrial time.  *See* 18 U.S.C. § 3585(a).  But this inference stands on a highly technical reading of the penal statutes, one that does not support excluding pretrial time from GCT eligibility.  *See Labeille-Soto*, 163 F.3d at 98 ("[T]he determination of the precise date on which a sentence begins appears to have been intended to be a ministerial decision that depends on the timing of the defendant's arrival at the appropriate place with respect to the sentence that is to be served, and we have held that '[a]fter a defendant is sentenced, it falls to [the] BOP, not the district judge, to determine when a sentence is deemed to commence' . . .") (*quoting Werber v. United States*, 149 F.3d 172, 179 (2d Cir. 1998).

The facts of Lopez's case demonstrate the lack of correlation between the reasons that a sentence begins on the date it is imposed, on the one hand, and the purposes of the GCT statute, on the other hand.  The Court sentenced Lopez under § 5G1.3(b) to 132 months' incarceration, adjusted for 94 months served, for a remaining period of 38 months.  The comments to the sentencing provision indicate that Lopez's "sentence" is the smaller number (38 months).  U.S.S.G. § 5G1.3 cmt. n.2(b).  This is because District Courts are not permitted to backdate sentences, or even to determine the date on which a sentence begins.  *See United States v. Gonzalez*, 192 F.3d 350, 353 (2d Cir. 1999) (vacating backdated sentence).  Rather, the date on which a sentence begins is a "ministerial" matter left to the BOP to determine based on when the prisoner is actually remanded into custody to begin serving his sentence.  *See Labeille-Soto*, 163 F.3d at 98. As a consequence, when seeking to credit a prisoner with time served on a related

sentence under § 5G1.3(b), courts cannot backdate the federal sentence to the day the prisoner started serving time on the prior conviction (a method that would include the prior time in the scope of the sentence), because to do so would usurp the BOP's ministerial function.  *See Gonzalez*, 192 F.3d at 353.  Instead, the sentencing court must accomplish the same result by adjusting the sentence to account for the time already served, allowing the BOP to determine when the sentence technically begins.  *Id*.  In Lopez's case, like in all § 5G1.3(b) cases, the BOP determined the sentence began the date it was imposed, because Lopez was already in custody at the time.  (*See* Resp. Br. at 23 n.9.)

The incorrect method (backdating) and the correct method (adjustment for time served) of applying § 5G1.3(b) produce the exact same result: the prisoner gets credit for the prior time served.  But courts must adhere to the "correct" method, the one that does not involve backdating and does not place the prior time within the bounds of the sentence, because it preserves the BOP's ministerial role in determining the date a sentence begins.  *See Gonzalez*, 192 F.3d at 353.  Though perhaps sensible in its own context, this rationale bears no relationship to the purposes of good conduct time or the meaning of the language of § 3624.  Little reason therefore exists to read a prisoner's "term of imprisonment," for GCT purposes, as being constrained by the same definitional limits that constrain a federal "sentence" under § 5G1.3(b) and § 3585(a), especially given the availability of a more logical interpretation.

Federal appellate courts have rejected similar attempts to extend this nuanced definition of a federal "sentence" to other statutory contexts.  *See Rivers*, 329 F.3d at 122 (collecting cases); *United States v. Ross*, 219 F.3d 592, 594 (7th Cir. 2000).  These cases

upheld adjustments under § 5G1.3(b) even though those adjustments produced "sentences" below the mandatory minimum prescribed by statute.  To explain, if a federal crime is subject to a 15-year minimum but the defendant has already served three years on a state conviction for the same underlying conduct, application of § 5G1.3(b) to the minimum term could be construed (and would be construed, under respondents' view) to result in a 12-year "sentence."  Where statute requires that the defendant "be sentenced" to not less than 15 years, the § 5G1.3(b) sentence is, strictly speaking, inadequate. *Rivers*, 329 F.3d at 122.  But the Second Circuit, following the Seventh and other circuits, found that to disallow the adjustment for this reason would "exalt[] form over substance." *Id.* (*quoting Ross*, 219 F.3d at 594).  The court held instead that the aggregate period of incarceration imposed for the federal crime—including the adjustment—should count toward the statutory minimum.  *Id.* ("So long as the total period of incarceration . . . is equal or greater than the statutory minimum, the statutory dictate has been observed and its purpose accomplished.").  As in *Rivers*, where the technical scope of the § 5G1.3(b) sentence was found not to govern the mandatory minimum analysis, it also makes little sense to restrict the definition of "term of imprisonment" by importing the same formalistic concept into the GCT statute.

The second, even stronger argument for Lopez's interpretation of the statute is that it draws upon persuasive rationales—the same rationales, in fact, that underlie the BOP's pretrial detention regulation.  Two tenets of statutory construction[15] favor reading

---

[15] Canons of construction often factor into plain meaning analysis.  *See New York v. U.S. Dep't of Health and Human Servs.*, 556 F.3d 90, 97 (2d Cir. 2009) ("[I]f we determine that Congress has not directly addressed the precise question at issue [] we turn to canons of construction . . . to see if those 'interpretative clues' permit us to identify Congress's clear intent.").  However, though canons of construction strongly support Lopez's position, the Court opts to consider them here, in the underlying discussion, not in the plain meaning analysis.  Because the Second Circuit has already found § 3624 to be ambiguous, and because other district courts have adopted the BOP's reading of the statute, the argument that the canons

"term of imprisonment" to mean "all the time served for the federal crime" rather than "sentence."  First, ambiguous statutory language must be interpreted to avoid absurd results.  *Troll Co. v. Uneeda Doll Co.*, 483 F.3d 150, 160 (2d Cir. 2007) ("[I]t is an elemental principle of statutory construction that an ambiguous statute must be construed to avoid absurd results.").  Under the interpretation the BOP advances here (as distinct from the interpretation it advances in § 523.17(*l*)), the amount of time a prisoner spends in prison for the same criminal conduct will vary according to the fortuity of the federal sentence date.  If prisoners cannot earn GCT until the sentence date, then they lose up to 54 days for each year they spend awaiting the culmination of federal criminal proceedings.  Under this formulation, any number of factors outside the prisoner's control—bureaucratic delay, a full court calendar, or the need to brief, argue, and decide complex sentencing issues—could extend his time in prison.  That is patently arbitrary. Lopez's case makes the point particularly well.  He had served almost eight years for the drug-related conduct underlying the federal conviction before the day this Court imposed his sentence, including a nine month gap between plea and sentence that resulted in part from the Court's consideration of supplemental briefing on the applicability of § 5G1.3. (Resp. Br. at 3.)  Under the BOP's interpretation, Lopez would be a victim of very bad luck: if the federal proceedings had advanced more rapidly—if federal officials had brought charges more quickly after the state conviction, or if the sentencing court had not required closer analysis of the applicable sentencing laws—he could get out of prison sooner.  Courts do not construe ambiguous statutory language to make the amount of time an individual spends in prison depend on luck.  *See United States v. Wilson*, 503

resolve the issue in Lopez's favor as a matter of plain meaning is somewhat implausible.  *See Sash*, 428 F.3d at 136; *Hickman*, 2006 WL 20489; *Ross*, 2008 WL 4745671.

U.S. 329, 334 (1992) ("[I]f the District Court had sentenced Wilson a few weeks later than it did, he would not have received credit under § 3585(b).  This interpretation would make the award of credit arbitrary, a result not to be presumed lightly.").  Presumably, the BOP contemplated this point when it promulgated the regulation permitting GCT for pretrial detention "in the event that the pretrial detainee is later sentenced on the crime for which he or she was in pretrial status."  § 523.17(*l*).  Because the agency did not address § 523.17(*l*) during this litigation, the Court does not know why the BOP did not apply the same reasoning to Lopez's case.  What is clear, however, is that if an absurd result is to be avoided, § 3624 must be interpreted to allow him and other prisoners who receive credit under § 5G1.3(b) to earn GCT for time in presentence custody.

Respondents retort that "courts have long recognized that Section 5G1.3(b) may produce differing results based on differing sentence dates."  (Resp. Br. at 22.)  They cite a Second Circuit decision that acknowledges that a prisoner cannot receive credit for prior time served under § 5G1.3(b) if he is sentenced after the prior term of imprisonment has already ended.  *Labeille-Soto*, 163 F.3d at 99.  For example, if Lopez had completed his state sentence before being sentenced in federal court, he would not have received an adjustment for any time served on the state drug conviction, at least not under § 5G1.3(b).  Given that the fortuity of sentence timing can carry such consequences in those circumstances, respondents argue that similar arbitrariness should not impact the Court's analysis here.

It is a curious argument.  Rather than identify a legal or policy rationale to explain why the length of an individual's imprisonment might logically depend upon how long it takes him to get a federal sentence date, respondents say instead that "arbitrariness

happens." That contention, aside from its illogic, does nothing to explain why the relevant interpretive canon (that statutes should be construed to avoid absurd results) should not govern. The canon applies only to ambiguous statutory language. *See Troll Co.*, 483 F.3d at 160. The language of § 3624 is ambiguous. *See Sash*, 428 F.3d at 136. On the other hand, the language in § 5G1.3(b) limiting the provision's scope to "undischarged" sentences is unambiguous. *See United States v. Dunham*, 295 F.3d 605, 610 (6th Cir. 2002); *United States v. Otto*, 176 F.3d 416, 418 (8th Cir. 1999); *Labeille-Soto*, 163 F.3d at 99. Thus, the canon applies to the GCT statute but not to the § 5G1.3(b) issue respondents identify. Moreover, the "undischarged sentence" requirement in § 5G1.3 does not actually force arbitrary results, because "a District Court has authority to depart downward in order to give a defendant credit for time served on his expired state sentence," even though § 5G1.3(b) might not apply. *Otto*, 176 F.3d at 418; U.S.S.G. § 5G1.3 cmt. 4 (2009) ("In the case of a discharged term of imprisonment, a downward departure is not prohibited if the defendant (A) has completed serving a term of imprisonment; and (B) subsection (b) would have provided an adjustment had that completed term of imprisonment been undischarged . . . .").[16] Respondents' contention that § 5G1.3(b) regularly produces "differing results based on differing sentence dates," aside from failing to explain why § 3624 should not be interpreted in conformity with an "elemental principle of statutory construction," is therefore incorrect. *Troll Co.*, 483 F.3d at 160. Simply put, the distinction § 5G1.3 draws between discharged and undischarged

---

[16] Before the Guidelines were amended in 2003 to include the above-quoted language, a circuit split existed as to whether courts could award downward departures for time served on discharged sentences. *See Werber v. United States*, 149 F.3d 172, 178 (2d Cir. 1998) (summarizing circuit split). The 2003 amendment, however, resolved this issue by expressly permitting such departures. *See* U.S.S.G. § 5G1.3 cmt. 4; *United States v. Anderson*, 95 Fed. App'x 368, 372 (2d Cir. 2004).

sentences does not justify construing § 3624's ambiguous language to produce an arbitrary result.

Moving to the second relevant canon of construction, ambiguous statutory language should be construed to further the statute's purposes. *McMahon v. Califano*, 605 F.2d 49, 52 (2d Cir. 1979). The BOP's interpretation of § 3624 (at least in this case) is at odds with the statute's purpose, while Lopez's interpretation advances that purpose. The statute grants GCT to encourage good behavior and enhance "administrative order" in prison. *Sash*, 428 F.3d at 134-35. But keying GCT eligibility to the federal sentence date significantly narrows § 3624's administrative impact. Under this framework, prisoners serving a related state sentence would have no GCT-based incentive from the time they become aware of federal charges to the time of the federal sentencing. Lopez, for example, would have had no reason to follow prison rules (no reason grounded in GCT or other sentencing credits, anyway) from at least the day he was writted into federal custody in 2004 to the time he was sentenced in 2008, as during that period he faced a looming federal sentence likely to swallow his state sentence and nullify the effect of any good behavior credit he may have been entitled to under state law. Again, the BOP presumably contemplated the wisdom of incentivizing prisoners yet to be sentenced when it made pretrial detainees eligible for GCT, but it has shown no consideration of the same point in Lopez's case. MCC officials, on the other hand, *did* recognize the need for behavioral incentives during the presentence period: after Lopez's 2005 altercation with another inmate, they drew upon § 3624 and announced that they would dock Lopez 21 days of GCT. (Hasan Decl. Ex. A at 4.) Those officials were on

the right track.  To advance the statute's objective, "term of imprisonment" should be interpreted to include presentence time credited under § 5G1.3(b).[17]

*

To summarize, the Court interprets "term of imprisonment" to encompass all of the time a prisoner serves for the federal offense, whether before or after the sentence date, and, if before the sentence date, whether credited under 18 U.S.C. § 3585(b) or U.S.S.G. § 5G1.3.  This is the most natural reading of the statute, and it advantageously avoids absurd results while advancing the statute's purpose.  Undoubtedly, however, the interpretation portends certain challenges in application.  In this case, it is easy to determine the range of time Lopez has served for his federal offense, because the sentencing court expressly found that his 94 months of presentence time counted against the total 132 month term that the federal offense warranted, and because that presentence time was served on related convictions for the same offense conduct.  (Hasan Decl. Ex. E at 17.)  But other cases may present tougher questions.  In *Montalvo*, for example, which involved a similar GCT-based petition, the sentencing court had calculated the prisoner's sentence by considering, under U.S.S.G. § 5G1.3(c), what the guideline range would

---

[17] In a materially different context, another district court opined that "[i]t would not accord with Congress's intent that GCT serve an 'incentive' function to award it for time served in state custody when the prisoner may not have anticipated any federal prosecution at all."  *Green v. United States*, No. 3:08 CV 681, 2009 WL 2982864, at *3 (N.D. Ohio Sept. 11, 2009).  The prisoner in *Green* had completed his state sentence before his federal sentencing date; he therefore was not eligible for a § 5G1.3 sentence and may well have already received the benefit of good behavior credit in the state system. See *id.* at *2.  By contrast, Lopez's state sentence was undischarged and was swallowed by his federal sentence.  The only consequence of awarding Lopez GCT for the time in state custody is a fundamentally fair one: he receives credit for any good conduct in state prison that would otherwise have shortened his period of incarceration under New York's regulatory scheme, had the state sentence not ended in the midst of the federal term.  *See* Application of Good Behavior Allowances, 7 N.Y. Comp. Codes R. & Regs. tit. 7, § 260.1 (2009).  In any event, to the extent *Green* can be read to apply to a § 5G1.3(b) case such as this, the Court finds it unpersuasive.  Presumably due to the arbitrariness that would otherwise follow, it is already the BOP's policy to award GCT to prisoners who begin periods of pretrial incarceration in state custody and who may well "not have anticipated any federal prosecution at all" during that time.  *Payton*, 159 F.3d at 62; Resp. Ltr. dated Nov. 23, 2009 at 2 n.1.

have been if the defendant had been sentenced on an unrelated state offense (on which he was already serving an undischarged sentence) at the same time he was sentenced for his federal crime.[18]  174 F. Supp. 2d at 11 ("The Court began by noting that the petitioner's Guidelines Sentencing Range would have been 121 to 151 months if the Court had sentenced the petitioner on the prior state court offense at the same time . . . .").  Because the court never decreed a term of incarceration for the federal offense independent of the unrelated state offense, there is no obvious way to separate presentence time served for the two unrelated crimes.[19]  *Id.*  Nor were the terms of imprisonment for the two crimes co-extensive, as neither crime alone could account for the full term imposed.  The answer in such a case might be to award GCT for all the presentence time served in *federal* detention, thus alleviating the prejudice caused by lengthy presentence proceedings and incentivizing prisoners in federal presentence custody to behave well, while also avoiding any untenable attempt to parse terms of imprisonment for two crimes considered together at sentencing.  But whatever the resolution, it is hardly surprising that complex sentencing situations should complicate GCT calculations.  The sheer complexity of the BOP's guidelines on GCT computation demonstrates that, even as currently interpreted, § 3624 poses applicational quandaries.  *See* BOP Program Statement 5880.28, *Sentence Computation*, at 1-40 – 1-62; BOP Program Statement 5160.05, *Designation of State Institution for Service of Federal Sentence*, at 10.  Regardless of how one reads the statute, it spawns difficult issues.  Thus, the challenges of calculating GCT for

---

[18] § 5G1.3(b) did not apply in *Montalvo*, because the crime underlying the state sentence "aros[e] out of different circumstances and involve[ed] different victims," and thus bore no relevance to the federal offense level.  *Id.* at 11.

[19] The *Montalvo* court did not actually reach an interpretation of § 3624(b) because the petitioner based his argument solely on § 5G1.3(b) and the erroneous contention that his federal sentence should have been "backdated" to the beginning of his state sentence.  *Id.* at 14-16.

presentence time in § 5G1.3 situations, though a problem for the agency to confront, do not justify excluding such time from the statute's scope, at least not on the record the agency has presented to the Court.

One final issue requires discussion.  Neither party has raised the point, but Lopez's related narcotics offense was not the only crime for which he served time in state custody.  Rather, between August 2000 and December 2008, Lopez served three concurrent state sentences: two for narcotics crimes within the scope of the federal conspiracy, which carried concurrent sentences of 4.5 to 9 years, and one for an unrelated conviction for possession of contraband in prison, which carried a 2 to 4 year sentence running concurrently with the other two.  (Hasan Decl. Ex. A, Presentence Investigation Report, at 8-9; Ex. B, Sentencing Tr., at 5:18-24.)[20]  He was sentenced for all three convictions on the same date: January 21, 2001.  *Id*.  Thus, some of Lopez's term of imprisonment for the federal offense conduct also counted toward other, unrelated conduct.[21]  As the BOP applies the GCT statute, however, this fact does not exclude any time from Lopez's "term of imprisonment" for GCT purposes.  The agency awards GCT to prisoners serving concurrent federal and state sentences in state facilities, regardless of whether the same or similar underlying conduct links the two sentences.  *See* BOP

---

[20] The Presentence Investigation Report incorrectly states that the contraband sentence was 4.5 to 9 years. (Hasan Decl. Ex. B at 5:18-24; Ex. E at 8:12-15.)

[21] Because the contraband sentence was fully discharged at the time of the federal sentencing, the sentencing court found that the unrelated sentence did not bar application of § 5G1.3(b) under *United States v. Brown*, 232 F.3d 44 (2d Cir. 2000), which held the provision inapplicable to defendants serving, at the time of federal sentencing, multiple undischarged sentences for both relevant and non-relevant conduct. (Hasan Decl. Ex. E at 16:3-17:1.)  The court also found that even if subsection (b) did not apply, it would award Lopez credit for the prior time served under subsection (c), which applies more broadly than subsection (b) and has a similar purpose.  *See id*; U.S.S.G. § 5G1.3(c) (permitting downward departures where "the defendant has served a very substantial period of imprisonment on an undischarged term of imprisonment that resulted from conduct only partially within the relevant conduct for the instant offense" to ensure "that the combined punishment [for multiple convictions] is not increased unduly by the fortuity and timing of separate prosecutions and sentencings. ").  On this petition, neither party contests the propriety of the sentencing court's application of § 5G1.3(b).

Program Statement 5160.05 at 7, 10 ("[W]hen a state institution is designated for the concurrent service of federal and state sentences . . . . The maximum amount of Statutory Good Time (SGT) or Good Conduct Time (GCT) an inmate is entitled to receive will be awarded unless documentation provided by state authorities recommends a forfeiture . . . ."). For example, if the *Montalvo* defendant had been remanded to state custody to serve his concurrent state and federal sentences, he would have been eligible for GCT for his time there, despite the lack of any relationship between the state and federal offenses. *See id.* The BOP awards GCT for a prisoner's entire "term of imprisonment" (as the agency defines the phrase), even if that term overlaps with a sentence for conduct other than the federal offense. This comports with the purpose of the GCT statute, which seeks to encourage good behavior during a term of imprisonment, not tailor punishments to particular crimes. *See Sash*, 428 F.3d at 134. Though the BOP would deny Lopez GCT for the presentence time based on its own definition of "term of imprisonment," which the Court rejects, the agency does not contend, and the Court does not find, that the concurrent, unrelated state sentence itself alters the GCT analysis. Because the Court holds that Lopez's presentence time falls within his term of imprisonment, he is eligible for GCT on that time regardless of the unrelated contraband sentence.

## CONCLUSION

For the reasons stated, Lopez's petition is granted. The BOP is ordered to recalculate Lopez's GCT in a manner consistent with this opinion, based on a term of imprisonment that began when he was arrested on August 11, 2000. To the extent it has not already done so, the BOP may consider Lopez's disciplinary record from the presentence period. The BOP is also ordered to consider Lopez for placement in a halfway house, in good faith adherence to 18 U.S.C. § 3624(c)(1) and applicable BOP policy and practice. *See Zucker*, 2004 WL 102779 at *11.

SO ORDERED.

Dated: New York, New York
     March **26**, 2010

Richard J. Holwell
United States District Judge